UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                          :
ELIZABETH NUSSBAUM,                                       :
                                                          :
                          Plaintiff,        :        12-cv-00367 (NSR)
         -against-                          :        OPINION AND ORDER
                                                          :
METRO-NORTH COMMUTER RAILROAD, and :
METROPOLITAN TRANSPORTATION                 :
AUTHORITY,                                                :
                          Defendants.       :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Elizabeth Nussbaum ("Plaintiff") commenced this action on January 17, 2012 against

Metro-North Commuter Railroad ("Metro-North") and the Metropolitan Transportation

Authority ("MTA") (collectively, "Defendants").  Plaintiff alleges that Defendants' negligence

caused her to slip and fall inside a Metro-North train car at Cold Spring station on August 16,

2011.  Before the Court is Defendants' Motion for Summary Judgment wherein Defendants

argue that Metro-North did not have actual or constructive notice of any unsafe or dangerous

condition on the train and that as a matter of law, MTA is not a proper defendant in this action.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

**Factual Background**

        Plaintiff Elizabeth Nussbaum was a regular commuter on Metro-North train designated

number 836, which departs from Poughkeepsie at approximately 7:00 a.m. and runs to Grand

Central Terminal.  Nussbaum Dep. 106:3-8; Moran Dep. 6:25-7:15.  After leaving Poughkeepsie,

the train =stops at New Hamburg and Beacon before arriving at Cold Spring station at

1

approximately 7:21 a.m.  Moran Dep. 45:5-12.  By the time the train arrives at Cold Spring station, it is generally about sixty percent full.  56.1 ¶16.  On August 16, 2011 at approximately 7:21 a.m., Plaintiff boarded train number 836, car 6442 at Cold Spring station wearing sandals with a rubber sole.  Nussbaum Dep. 108:3-8.  As she boarded the train, Plaintiff entered the vestibule, took two to three steps to the left into the train car, slipped and fell.  56.1 ¶3.  Plaintiff hit her head and was injured.  *Id.*

Joe Moran, a Metro-North employee, was the conductor on train 836 on the morning of August 16, 2011.  56.1 ¶13.  The train was "fresh" when it left Poughkeepsie at approximately 7:00 a.m., meaning that it had been cleaned overnight.  56.1 ¶14.  On the morning of August 16, 2011, it was overcast and rainy, and due to weather conditions, passengers had tracked water into the train.  56.1 ¶15.  While the train was still stopped at Cold Spring, another passenger informed Mr. Moran that Plaintiff had fallen.  56.1 ¶17.  Mr. Moran reported the fall and a standard "Report of Incident" was filed.  Keaveney Dec. Ex. E.

Trains leaving from Poughkeepsie undergo a daily layover cleaning where Metro-North employees perform a three-step cleaning process.  The Metro-North employees pick up large pieces of garbage, sweep smaller pieces of garbage, and then mop the floors of each train car.  Boynas Dep. 9:4-16.  The floors of the train care are mopped with a mixture of water and concentrated floor soap, designated as FO2276.  FO2276 is manufactured by Fine Organics Corporation.  *Id* at 9:20-10:3.  Fine Organics has been supplying Metro-North with FO2276 since before 2006.  Goldberg Dep.12:1-19; Boynas Dep. 37:7-15.  FO2276 is a water-based liquid alkaline cleaner that is intended for cleaning interior surfaces of passenger cars.  Goldberg Dep. 33:10-14.  The recommended concentration of the solution is one part FO2276 to between

ten and twenty parts water.  Id at 36:15-17.  This recommendation is printed on the label affixed

to each bottle of FO2276.  Affidavit of Ronald J. Parrington Ex. E.

A Metro-North foreman, Edward Boynas, testified that Metro-North employees use

varying amount of water to FO2276 concentration when cleaning the floors due to the fact that

there is no standard measuring system.  56.1 ¶24, 25; Boynas Dep. 15:1-5.  He testified that,

based on his observations, the concentration ratio of water to FO2276 used by Metro-North

employees could be between 3:1 and 5:1.  Boynas Dep. 14:21-15:5; 48:4-49:35.  Mr. Boynas

also stated that employees would not use a concentration that was more diluted than 5:1.  *Id* at

49:13-16.  The process for cleaning the floors involves Metro-North employees dumping an

amount of the water and soap mixture onto the floor, mopping the floor with the solution, and

continuing until the entire train car has been mopped.  56.1 ¶26; Boynas Dec. 15:19-16:24.

Plaintiff submitted an expert witness report from Ronald J. Parrington, P.E. FASM,

president of IMR Test Labs.  Maurer Dec. Ex. 13.  Mr. Parrington performed a coefficient of

friction test on sample railroad car floor tiles to determine the coefficients of friction of the train

floor tile when dry, wet, and when introduced with four different concentrations of soap solution.

Parrington Affidavit ¶7.  To conduct the tests, Mr. Parrington used a standard test method for

static and kinetic coefficients of friction, known as ASTM D 1894-11.  *Id* at ¶8.  The sample tiles

that Mr. Parrington used in his test were provided by Metro-North.  *Id* at ¶5.  Plaintiff provided

Mr. Parrington one of the shoes she was wearing at the time of her fall.  *Id*.  Mr. Parrington

performed hardness testing and Fourier Transform Infrared analysis on the sole of the shoe and

determined a certain material that was representative of the rubber on the sole of Plaintiff's shoe.

*Id* at ¶6.  The coefficient of friction tests were then performed with this material.  *Id*.  Mr.

3

Parrington used strips of the test flooring to test six different surfaces: dry, wet with no soap solution, wet with a solution of three parts water to one part FO2276 (3:1 solution), wet with 5:1 solution, wet with 10:1 solution, and wet with 20:1 solution. *Id* at ¶7. Each floor sample was tested five times. *Id.* Based on his tests, Mr. Parrington concluded that "compared to water alone, the presence of floor cleaner/detergent residue decreases the static coefficient of friction by 15 – 24% and decreases the kinetic coefficient of friction by 17 – 28%" and that such a decrease "would be expected to have a significant contribution to the likelihood of a slip or fall." *Id* at ¶12.

## Discussion

### I. Summary Judgment

#### a. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. The Rule states, in pertinent part, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially point to evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, . . . . or other materials," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the burden shifts to the nonmoving party to raise the existence of a genuine issue of material fact.

Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit

under the governing law[,]'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.

2000) (internal citation omitted), and a genuine dispute of material fact exists when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen.*

*Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City*

*of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record, "the

judge's function is not himself to weigh the evidence and determine the truth of the matter," nor

is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat*

*Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the

motion for summary judgment is not to resolve disputed questions of fact.").  Rather, "the

inquiry performed is the threshold inquiry of determining whether there is the need for a trial."

*Anderson*, 477 U.S. at 250.  Summary judgment should be granted when a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case." *Celotex*

*Corp. v.* Catrett, 477 U.S. 317, 322 (1986).

"Statements that are devoid of any specifics, but replete with conclusions, are insufficient

to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).  "If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks, citations, and alterations omitted).

"While circumstantial evidence is considered [on a motion for summary judgment], mere speculation and conjecture are insufficient to defeat such a motion." *Kshel Realty Corp. v. City of New York*, No. 01 Civ. 9039(LMM), 2006 WL 2506389, at *2 (S.D.N.Y. Aug. 30, 2006) (citing *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002)); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  "'Cases grounded on wholly circumstantial evidence require a showing of sufficient facts from which the negligence of the defendant and the causation of the accident by that negligence can be reasonably inferred.'" *Estate of Novack by Novack v. R.D.C. Realty, Inc.*, 1 F. Supp. 2d 163, 167 (D. Conn. 1998) (quoting *Thomas v. New York City Transit Auth.*, 599 N.Y.S.2d 127, 128 (2d Dep't 1993)).

### b.  Admissibility of Expert Opinion

As a preliminary matter, the Court must decide whether the expert opinion of Mr. Parrington is admissible, as only admissible evidence may be considered when deciding a motion for summary judgment.  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998); *Ohlsson v. JBC Bowling* Corp., No. 99–CV–0890E(F), 2001 WL 1117162, at *3 (W.D.N.Y. Sept. 14, 2001) ("When ruling on a motion for summary judgment, a court may

consider the affidavit of an expert witness only if that expert's testimony would be admissible at

trial.").  "If a proffer of expert testimony in the form of an expert report is excluded as

inadmissible under Rule 702, the summary judgment determination is made on a record that does

not include that evidence." *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL

341135, at \*2 (E.D.N.Y. Mar. 9, 2000) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66-67 (2d Cir.

1997)).

District courts have broad discretion to determine the admissibility and qualification of

experts pursuant to Federal Rule of Evidence 702.  *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81

(2d Cir. 1997).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.  Under *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court set forth

four non-exhaustive factors to determine the reliability of an expert's reasoning or methodology:

(i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique

has been subjected to peer review and publication; (iii) whether there is a known or potential rate

of error and the existence and maintenance of standards controlling the technique's operation in

the case of a particular scientific technique; and (iv) whether the theory or method has been

generally accepted by the scientific community.  *Daubert v. Merrell Dow Pharmaceuticals*, 509

U.S. 579, 593-94 (1993). "[T]he trial judge must ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable." *Id* at 589.  The factors set forth in *Daubert*

are not exhaustive and are applied flexibly, especially where the testimony is based on

"technical" or "other specialized knowledge," as is the case with engineers.  *Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Mr. Parrington has a bachelor's degree and a master's degree in Materials Engineering

from Rensselear Polytechnic Institute and has been working as an engineer since 1980.  Mr.

Parrington is currently the President of IMR Test Labs, a commercial materials and product

testing laboratory.  Additionally, Mr. Parrington teaches courses in materials engineering and

failure analysis.  There can be no doubt that he is qualified as an expert to testify regarding static

and kinetic coefficients of friction between two surfaces.  While a reasonable juror is likely to

know that a floor becomes more slippery when wet, the same is not true of the change in traction

of a floor that has been cleaned with a solution compared to a floor that is wet only due to water.

Thus, the subject of the expert testimony is not one about which a reasonable juror would likely

have knowledge and is therefore appropriate as the subject of an expert opinion.

Mr. Parrington's expert opinion states the following two conclusions:

1.  Compared to water alone, the presence of floor cleaner/detergent residue decreases
    the static coefficient of friction by 15 – 24% and decreases the kinetic coefficient of
    friction by 17 – 28%.  This decrease in the coefficients of friction is even greater than
    that observed between dry and wet surfaces.
2.  A decrease in the coefficient of friction of this magnitude would be expected to have
    a significant contribution to the likelihood of a slip or fall.

Keaveney Dec. Ex. J IMR #201305204A.  To arrive at these conclusions, Mr. Parrington

performed coefficient of friction testing using a standard test method known as ASTM D 1894-

11.  Defendant makes several contentions against the expert report, including: it failed to

consider whether the new and unused floor tile adequately mirrored the conditions of the train at

the time of the accident; it failed to consider the effect mopping had on the distribution of the

8

soap solution; it failed to consider the effect that people walking on the floor might have; and it does not state what an acceptable coefficient of friction would be, making the conclusion unreliable.  Pl. Reply Mem. 6-7. These arguments, however, do not challenge the admissibility of the expert report.  The threshold matter is whether there is the need for expert testimony and whether that testimony is reliable, such that it satisfies the district judge's "gatekeeping" obligation under *Daubert* and *Kumho Tire*.  Mr. Parrington, qualified in the field about which he testifies, used a standard testing method for determining kinetic and static coefficients of friction. Mr. Parrington specifies the methods used and the steps taken in conducting the tests.  There is no indication that the way that Mr. Parrington carried out the tests was unreliable.  *C.f. Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL 341135, at *4-5 (E.D.N.Y. Mar. 9, 2000) (expert opinion about slipperiness of floor tile not admissible because there was "no indication in [the expert's] report of the engineering protocols and methods he employed in arriving at the normative conclusions embodied within the claims. . . . [Expert] made no mention of [objective] methods or [scientific] standards in opining on these matters, appearing to rest solely on his laurels as a civil engineer . . . . ").  Defendants could have challenged the method Mr. Parrington used, but that argument was not submitted.  Any other challenge to Mr. Parrington's testimony is more appropriately addressed at trial.  *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  The Court is satisfied that Mr. Parrington's testing method is reliable and concludes that the expert testimony is admissible and will therefore consider it in deciding the motion for summary judgment.

**II.  Dismissal of MTA as Defendant**

9

Defendants seek to dismiss the MTA as a defendant from this case, which Plaintiff does not oppose.  Therefore, the MTA is dismissed as a defendant from this action.[1]

### III. Analysis

On a summary judgment motion in an action for negligence, "'the plaintiff must introduce adequate evidence on each element of negligence sufficient to support a favorable jury verdict[, and] ... in cases where proof of any essential element falls short the case should go no further.'"  *Stanton v. Manhattan E. Suite Hotels*, No. 01-CV-2394, 2002 WL 31641127, at *2 (S.D.N.Y. Nov. 22, 2002) (quoting *Basso v. Miller*, 40 N.Y.2d 233, 242 (1976)).  In New York, establishing a prima facie case of negligence requires the plaintiff to "demonstrate that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that, as result, the plaintiff suffered an injury." *Lopez v. U.S.*, No. 10 Civ. 01758(DF), 2012 WL 983560, at *5 (S.D.N.Y. Mar. 23, 2012); *see also Allstate Ins. Co. v. Fleury*, No. 5:99-CV-1261, 2007 WL 1200137, at *3 (N.D.N.Y. Apr. 20, 2007); *Cusack v. Peter Luger, Inc.*, 77 A.D.3d 785, 909 N.Y.S.2d 532, 533 (2d Dep't 2010).  Plaintiff need not show direct evidence in support of each element, but instead, "'[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.'"  *Kramer v. Showa Denka K.K.*, 929 F.Supp. 733, 747 (S.D.N.Y. 1996) (quoting *Schneider v. Kings Highway Hosp. Ctr., Inc.*, 67 N.Y.2d 743, 744, 490 N.E.2d 1221, 500 N.Y.S.2d 95 (N.Y. 1986)).

---

[1] The MTA is not a proper party to this action, in any event.  This case derives from a slip and fall on a Metro-North train, and the MTA may not be held liable for torts related to its subsidiary, Metro-North.  *See Majer v. MTA*, No. 90 Civ. 4608 (LLS), 1992 WL 110995 (S.D.N.Y. May 7, 1995); *see also Noonan v. Long Island R.R.*, 551 N.Y.S.2d 232, 233 (1st Dep't 1990)  ("[T]he MTA may not be liable for the torts committed by a subsidiary arising out of the operations of the subsidiary corporation.").

As a common carrier, the Metro-North owes a duty of care to passengers on its trains of reasonable care under the circumstances. *Bethel v. New York City Transit Auth.*, 92 N.Y.2d 348, 356 (1998) ("[A] common carrier is subject to the same duty of care as any other potential tortfeasor-- reasonable care under all of the circumstances of the particular case.").

### a. Breach of Duty

In the context of a slip and fall case, such as the one here, proving breach of duty requires a showing that "defendants created the condition which caused the accident or that the defendants had actual or constructive notice of the condition." *Gaeta v. City of New York*, 624 N.Y.S.2d 47, 47 (2d Dep't 1995); *Acevedo v. New York City Transit Auth.*, 947 N.Y.S.2d 599, 600 (2d Dep't 2012) ("To impose liability upon a defendant in a trip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it.").

### i. Existence of Dangerous Condition

The first inquiry is whether there was a dangerous condition on the train. Passengers loaded at three stations prior to arriving at Cold Spring station and was approximately sixty percent full. On the morning of Plaintiff's fall, it was overcast and rainy and passengers tracked water into the train, as often happens on rainy days. Plaintiff stated that the floor of the train car was "wet" but "not puddled." Def. 56.1 ¶4. New York courts have long held that a defendant is not required to constantly remove moisture from the ground that has been tracked into a building lobby, subway car, train car, or other similar location due to precipitation. *See Schultz v. U.S.*, 203 F.Supp. 941, 943 (E.D.N.Y. 1962) ("[A store owner] cannot prevent some water and mud

being brought into an entranceway on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions.") (citing *Miller v. Gimbel Bros., Inc.*, 262 N.Y. 107 (1933)); *see also Solazzo v. New York City Transit Auth.*, 6 N.Y.3d 734, 735 (2005) ("A property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of [a slippery] condition occurring during an ongoing storm or for a reasonable time thereafter."); *Marte v. New York City Transit Auth.*, 715 N.Y.S.2d 704, 706, 843 N.E.2d 748, 810 N.Y.S.2d 121 (2d Dep't 2000) ("The puddle could have occurred as a result of water dripping from the clothing or umbrellas of other passengers who had boarded the subway car immediately before [the plaintiff] boarded it."); *Alatief v. New York City Transit Auth.*, 681 N.Y.S.2d 562, 563, 256 A.D.2d 371 (2d Dep't 1998) ("[I]t was undisputed that it was still raining at the time of the occurrence and, accordingly, the accumulation could have occurred as a result of water dripping from the clothing or umbrellas of other passengers who had boarded the subway car immediately prior to the boarding by the injured plaintiff."). Further, "[a] general awareness that the stairs and platforms become wet during inclement weather [is] insufficient to establish constructive notice of the specific condition causing plaintiff's injury." *Solazzo*, 6 N.Y.3d at 735; *see also Piacquadio v Recine Realty Corp.*, 84 N.Y.2d 967, 969, 646 N.E.2d 795 (N.Y. 1994).

Plaintiff, however, bases her case on the theory that Metro-North caused the dangerous condition on the train car by using an improperly high soap to water ratio when cleaning the floors of the train cars. Plaintiff alleges that this caused the floors to be more slippery than they otherwise would have been. The parties agree that there is no direct testimony of soap residue on the train car in the spot where Plaintiff slipped. Defendants believe this fact supports the

assertion that there was no dangerous condition on the train car.  Plaintiff, in response, introduced testimony from a Metro-North train conductor who stated that it was not unusual to see white residue on the floor of train cars.[2]  Further, Plaintiff's expert, Mr. Parrington, submitted an affidavit stating that the static and kinetic coefficients of friction decrease as the concentration of the soap solution increases.  These facts satisfy Plaintiff's burden of raising a triable question of fact as to whether the FO2276 solution in amounts that Metro-North employees purportedly used created a dangerous condition and whether that condition was present at the spot of the fall.  Defendants have not provided any evidence contradicting Plaintiff's expert that the soap residue makes the train car more slippery than the dry train surface.  Therefore, there is an issue of fact as to whether there was a dangerous condition on the train that morning.

### ii.   Creation of Dangerous Condition

Plaintiff bases her case on the fact that Defendants breached a duty by creating a defect or dangerous condition on the train car.  Even assuming, *arguendo*, that on the day of the accident the Metro-North employees did use a higher than recommended soap concentration, of which there is no direct evidence on the record, New York case law holds that a property owner's application of a substance such as wax, polish, paint, or in this case, soap, does not support a

---

[2] Mr. Moran testified as follows:

> Q.    When you walked through any passenger trains prior to the date of this accident when you were preparing the trains for passenger service before you started the train's run did you ever observe any conditions on the floor of the train that looked like there was any sort of residue present like a milky white or anything like that on any sections of the floor?
> A.    Yes.
> Q.    And in your experience is that unusual?
> A.    No.

Moran Dep. 39:21-40:10.

negligence cause of action unless the manner of application itself was negligent.  *See Early*, 73 A.D.3d 559, 562, 904 N.Y.S.2d 367 (1st Dep't 2010); *Mroz v. Ella Corp.*, 262 A.D.2d 465, 465, 692 N.Y.S.2d 156 (2d Dep't 1999) ("It is well settled that in the absence of evidence of a negligent application of floor wax or polish, the mere fact that a smooth floor may be slippery does not support a cause of action to recover damages for negligence."); *Kociecki v. EOP-Midtown Properties, LLC*, 888 N.Y.S.2d 135, 136, 66 A.D.3d 967, 967 (2d Dep't 2009) (same); *German v. Campbell*, 37 A.D.3d 405, 405, 829 N.Y.S.2d 631 (2d Dep't 2007) ("The expert affidavit submitted in opposition to the motion merely alleged that the application of the paint to the floor made it inherently slippery, which was insufficient to raise a triable issue of fact."). "For a plaintiff to prove prima facie negligence, even if she can credibly infer creation by defendant, she must show the creation was an affirmative, 'deliberate and intentional' act by defendant."  *Olsen v. K Mart Corp.*, No. 04-CV-3648 (JMA), 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005) (quoting *Cook v. Rezende*, 32 N.Y.2d 596, 599 (1973)).

Defendants did not intentionally create a dangerous condition in the train car.  The record is deplete of evidence that Metro-North employees knew that using too much FO2276 in the cleaning solution would result in the train floor being more slippery than usual.  Even though the label on the bottle of FO2276 recommends a certain concentration of soap solution, there is nothing to suggest that improper use would create a danger to passengers.  Additionally, the label indicates that such use is "recommended," and there are no warnings to enforce such recommendation, as might be expected if improper use could be dangerous.  The national sales and marketing manager of Fine Organics, Lewis Goldberg, also testified that such use was

recommended.[3]  Goldberg Dep. 33:15-17.  Further, Defendants did not know that the use of soap

was causing a dangerous condition, as there is no evidence that any passenger had ever slipped

because of the soap prior to this incident.  The manner of application, therefore, cannot be

considered negligent.

Where the defendant is alleged to have created the dangerous condition, "usual questions

of notice of the condition are irrelevant," *Cook v. Rezende*, 32 N.Y.2d 596, 599 (1973), because

an owner who creates a condition generally knows about it, as a matter of course.  In *Walsh v.

Super Value, Inc.*, 76 A.D.3d 371, 374 (2d Dep't 2010), however, a case cited by both Plaintiff

and Defendants, the court stated that "[i]t is possible, even for a reasonable person acting

reasonably, to create a dangerous or defective condition without realizing it, and remain ignorant

of it for a period of time."  In such a case, the court held that "absent a statute imposing strict

liability, a defendant may not be held liable for creating a dangerous or defective condition upon

property unless the defendant had actual, constructive, or imputed knowledge of the danger

created."  *Id* at 372; *see also Flickinger v. Toys R Us-Delaware, Inc.*, 492 Fed. App'x 217, 221

(3d Cir. 2012) (in response to plaintiff's challenge the *Walsh v. Super Value* was "not binding,"

the Third Circuit stated, "Because only the intermediate appellate court had addressed the

scenario confronted by the District Court here—where a defendant could have created a

condition and been unaware of it—it was entirely appropriate for the Court to rely on *Walsh*.

Indeed, requiring actual or constructive notice here was all the more appropriate, because there

---

[3] In fact, it seems that Mr. Goldberg initially testified that the recommended dilution is nine parts water to one part soap before being shown the FO2276 label at his deposition.  Neither party provided the page from transcript with such direct language, however, later in the deposition, Mr. Goldberg is asked, "Would you defer to [the information on the label] as opposed to what you testified to a little while earlier when you said one to nine parts?"  Goldberg Dep. 34:3-6.  This supports the fact that the recommendation on the bottle is not a rigid rule.

was no direct evidence that any employee of [the defendant] created the hazardous condition . . . ."). In *Walsh*, plaintiff slipped on a curb outside of a gas station convenience store that has been painted by defendants on a day that was "misty." *Walsh*, 76 A.D.3d at 373. Plaintiff's expert raised a "triable issue of fact as to whether a dangerous or defective condition was created[.]" *Id* at 374. The court acknowledged the line of cases regarding a property owner causing a floor to be slippery through his or her own application of wax, polish, or paint to the floor making it slippery, but stated that those "cases stand for the proposition that the application of wax, polish, or paint to a floor in a nonnegligent manner will not, standing alone, support a negligence cause of action for making the floor slippery." *Walsh*, 76 A.D.3d at 374. Instead, *Walsh* held that rather than determining the outcome of the case based on whether the defendant created the condition, the inquiry should instead be whether the defendant had actual, constructive, or imputed notice of the condition. *Walsh v. Super Value, Inc.*, 76 A.D.3d at 374. Even applying the standard as set forth in *Walsh*, summary judgment is warranted because there is no genuine issue of fact on the question of actual or constructive notice.

### iii.  Constructive Notice

Constructive notice is established if "a defect [is] visible and apparent and it . . . exist[s] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.S.2d 836, 837 (1986). "The absence of evidence demonstrating how long a condition existed prior to a plaintiff's accident constitutes a failure to establish the existence of constructive notice as a matter of law." *Early*, 73 A.D.3d at 561.

16

It is uncontroverted that employees of Metro-North used FO2276 to wash the floor of train car 6442 overnight before the train was in use on August 16, 2011, as train cars overnighting in Poughkeepsie were washed every night.  However, Metro-North has submitted prima facie evidence that neither it, nor its employees, was aware of the fact that the use of a high soap-to-water ratio of the solution on the floor would make the surface more slippery when wet.  Although the conductor testified that he had, on occasion, noticed a white residue on the train, he testified that he did not recall seeing any residue on the morning of August 16, 2011.  There were no prior complaints that day on train 836 of either a wet floor or a residue on the floor.  Because there were no prior complaints and neither the Plaintiff nor the conductor saw any soap residue on the floor of the train car in question, it could not have existed long enough for defendants to remedy the condition.

Both parties agree that there is no direct evidence that there was soap residue on the floor of the train car.  Plaintiff insists, however, that there is enough circumstantial evidence to infer that there was residue on the floor.  "Circumstantial evidence is sufficient if it supports the inference of causation or of negligence even though it does not negative the existence of remote possibilities that the injury was not caused by the defendant or that the defendant was not negligent." *Dillon v. Rockaway Beach Hosp. & Dispensary*, 284 N.Y. 176, 179 (1940).  Here, because constructive notice requires a defect or dangerous condition to be visible for enough time to allow defendant to remedy the condition, Metro-North employees could not have had constructive notice of the condition because there is no evidence that there was any soap residue on the floor.  *Morales v. Foodways, Inc.*, 186 A.D.2d 407, 408 (1st Dep't 1992) ("There is no evidence—hearsay or otherwise—regarding the condition of the floor immediately prior to the incident.").

17

"Although plaintiff's proof need not 'positively exclude every other possible cause of the accident but defendant's negligence,' plaintiff is required to render those other causes sufficiently 'remote' or 'technical' so that the jury may reach its verdict based on logical inferences to be drawn from the evidence, not upon speculation." *St. Paul Mercury Ins. Co. v. Pepsi-Co Bottling Co. of New York, Inc.*, CV-04-360 (DGT), CV-04-2556 (DGT),  2007 WL 2262889, at *6 (E.D.N.Y. Aug. 3, 2007) (quoting *Schneider v. Kings Highway Hosp. Ctr., Inc.*, 67 N.Y.2d 743, 744 (1986)).  The possibility that Plaintiff slipped on soap residue as opposed to the wet floor on a day when it was raining and there is testimony that passengers had tracked water in to the train car, including Plaintiff's own testimony that the floor was wet, is mere speculation, and cannot sustain Plaintiff's claim.

### iv.   Actual Notice

"To prove actual notice, plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." *Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775(GWG), 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013).  "[I]f [defendant] has either created the condition or has received reports or complaints [from others] about the condition" then defendant is held to be aware of the condition.  *Id* (citing *Buskey v. Boston Mkt. Corp.*, No. 04 CV 2193(SJ), 2006 WL 2527826, at *6 (E.D.N.Y. Aug.14, 2006)).

It was already established the Defendants did not create the dangerous condition, as creation of a condition is defined under New York law.  There is no indication, despite an exhaustive search of the Metro-North accident database, that there were any previous slip and falls caused by soap residue on the floor of the train car.  In fact, Metro-North's records over the past twenty-eight years indicate that there have been a total of 114 incidents, or an average of 4

18

incidents a year and no indication that any are directly attributable to Metro-North's use of FO2276.  The conductor of the train that day did not notice any white residue on the floor of the train car.  56.1 ¶11.  Plaintiff herself believed the cause of her fall to be the wet floor and testified that she was looking at the ground when she was walking on the train and said that there was a "sheen" on the floor.  Nussbaum Dep. 35:16-24. Metro-North, therefore, has satisfied its burden of establishing a prima facie entitlement to summary judgment by showing that a reasonable person in the Metro-North's position would not have known, and would have no reason to know, that using the solution on the floor would cause a dangerous condition.

Plaintiff submits, in opposition, that the label on the bottle of FO2276 and Metro-North's own specifications called for a soap solution that was much less concentrated than what was typically used by Metro-North employees to clean the train.  However, as stated above, there is no evidence to support the assertion that such use of the soap leads to the conclusion that Metro-North employees knew that doing so would create a dangerous condition.

Therefore, even assuming that soap residue makes the floor more slippery, Defendants have proffered evidence that Metro-North did not have actual or constructive notice of the condition of the floor.  Because there is no genuine issue of fact on the question of breach, Defendants' motion for summary judgment on Plaintiff's negligence claim is granted.

### b.  Failure to Warn

Plaintiff argues that Metro-North had a duty to warn Plaintiff and other train passengers of the condition of the floor.  "Without evidence legally sufficient to permit a jury to rationally infer that the defendant had constructive notice of a dangerous condition, the defendant cannot be held liable for failure to warn or to remedy the defect." *Maguire by Maguire v. Southland*

19

*Corp.*, 665 N.Y.S.2d 680, 681 (2d Dep't 1997); *Herman v. State*, 63 N.Y.2d 822, 823 (1984) ("To be liable in damages for failure to warn of a dangerous condition, a property owner must have notice of the condition itself as well as the unreasonable risk it creates."). As discussed above, Defendants have established that there was no actual or constructive notice of a dangerous condition and therefore, Defendants cannot be held liable for failure to warn of such condition.

Conclusion

Based on the foregoing, the Court grants Defendants' motion for summary judgment in its entirety. The Clerk of the Court is respectfully requested to terminate the motion (Doc. 33) and close this case.

Dated:    January 21, 2014            SO ORDERED:
           White Plains, New York

NELSON S. ROMÁN
United States District Judge

20